

FILED
SEP 27 2012
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____ Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. Lisa Delmedico Harris<br>　　　　　　　Plaintiff,<br><br>vs.<br><br>2. Mattel Inc., a Delaware Corporation<br><br>　　　　　　　Defendant. | COMPLAINT CIV 12 - 4 0 4 - RAW<br><br>CASE NO.:<br>JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

Plaintiff, Lisa Delmedico Harris, an individual, by her attorneys for her Complaint against Defendant Mattel Incorporated (the "Defendant"), alleges as follows:

### INTRODUCTION

1.　　This is an action in law and equity for trademark infringement, false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Additionally, this is an action for unfair competition and intentional infliction of emotional distress under Oklahoma state law. This action also arises under the Federal Copyright Act of 1976, as amended, 17 U.S.C. §101, et seq., hereinafter referred to as the "Act." Jurisdiction is founded on Sections 1331, 1338(a) and 1338(b) of the Judicial Code (28 U.S.C. §§ 1331, 1338(a) and 1338(b)).

　　As set forth below, Plaintiff is the leading publisher and seller of popular PRINCESS CHARM SCHOOL branded books, jewelry, grooming kits, clothing, CDs, teaching material, and other related items that provide entertainment and instructional information for young girls regarding etiquette, manners, grooming, behavior, and poise.

　　Defendant has adopted and used in commerce the name "PRINCESS CHARM SCHOOL" to advertise and promote DVDs, numerous books, dolls and toys, as well as etiquette events. Additionally, Defendant derives financial gain from operating a website www.barbie.com/princess-charm-school. Defendant markets these products and services variously to young girls. Moreover, Defendant has leveraged and marketed the use of an etiquette expert to promote their products and services, namely with events where young girls can learn princess-worthy manners and etiquette. As detailed herein, if Defendant is not immediately enjoined from their use of the PRINCESS CHARM SCHOOL name, the relevant consuming public is likely to be confused. Indeed, incidents of actual confusion have already occurred. These actions have caused and will continue to cause significant damage and harm to Plaintiff, its trademark and copyrights, and the significant goodwill associated with its PRINCESS CHARM SCHOOL goods and services.

　　Given the significant web presence and financial prowess of Defendant (and Defendant's powerful corporate customers such as Wal-Mart, Toys "R" Us, and Target), Defendant's adoption, use, and marketing of the PRINCESS CHARM SCHOOL name

1

(particularly over the Internet) has drown out or at least significantly diminished Plaintiff's ability to effectively market and sell its PRINCESS CHARM SCHOOL products and services to the public. Not only has this created a deleterious effect on Plaintiff's business and educational initiatives, it has adversely affected the ability of children and families to gain ready access to the PRINCESS CHARM SCHOOL products and services —products and services that have garnered significant praise and that were gaining great strength and recognition in the industry until Defendant's entrance into the market.

## PARTIES

2.      Lisa Delmedico Harris is an individual having an address and domiciled at RT. 1 BOX 31100, Porum, Oklahoma 74455.

3.      Upon information and belief, Mattel Inc., is a Delaware corporation having an address and principal place of business at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801. On information and belief, Defendant is the largest toy company in the world based on revenue. Defendant also maintains systematic and continuous contacts with this state by selling products to citizens of this state and residents within this judicial district, and engaging in extensive marketing and promotional activities here, including the advertising and promotion of the accused product bearing the name "PRINCESS CHARM SCHOOL."

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121. Jurisdiction is also vested in this Court under 28 U.S.C. § 1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      This Court has personal jurisdiction over the Defendant pursuant to 12 O.S. Supp. 2002 § 2004, by virtue of the fact that, upon information and belief, it: (1) regularly solicits business in this state; and (2) has committed a tortious act within the state by committing acts of infringement and unfair competition in this state.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 and § 1391(b)(2) and (c) and 1400(a) of the Judicial Code (28 U.S.C. § 1391(b)(2) and (c) and 1400(a)).

## FACTS COMMON TO THE COUNTS

7.      Plaintiff began creating and selling products and providing services using the PRINCESS CHARM SCHOOL name on or about June of 2008. Since then, Plaintiff has diligently and continuously utilized this name in commerce, in association with various products and services, products that will be described in greater detail *infra* in this Complaint.

8. Plaintiff has invested significant time and effort into developing, marketing, and selling products such as books, jewelry, grooming kits, clothing, digital downloads, teaching material, and other related items that provide entertainment and instructional information for young girls in etiquette, manners, grooming, behavior, and poise. More specifically, Plaintiff is using the PRINCESS CHARM SCHOOL domain to sell books such as "Princess Charm School" and "The Official Princess Handbook" as well as grooming kits, placemats, etiquette events, jewelry, and other products and services.

9. Until the Defendant entered the market with their *Infringing Goods*, Plaintiff enjoyed exclusive use of the PRINCESS CHARM SCHOOL name in commerce, providing the aforementioned products and services to their customers.

10. The public's perception of Plaintiff's mark related to their goods and services grew steadily as Plaintiff marketed their products through both traditional and online retail establishments. Plaintiff also actively marketed their goods and services using social media and traditional marketing vehicles.

11. On or about June of 2011, a full three years after Plaintiff's earliest use of their marks, Defendant released a whole host of *Infringing Products* including books, dolls, as well as a direct-to-DVD movie under the PRINCESS CHARM SCHOOL name. The Defendant's *Infringing Products* misappropriate not only the trademark established by the Plaintiff, but also Plaintiff's original, copyrighted materials.

12. Plaintiff's products and services, which are marketed using Plaintiff's PRINCESS CHARM SCHOOL name and Defendant's *Infringing Products*, are directed to the same consumers, which are young girls.

13. Plaintiff's products are directed to entertaining and instructing young girls regarding important life skills such as poise, beauty, integrity, character, confidence, and the like. Interestingly enough, Defendant has marketed their *Infringing Products* to the exact same consumers and for the exact same ends, namely by facilitating a "Barbie Princess Charm School" mall tour around the United States. These events were advertised as including a Princess Charm School stage show where you learn <u>princess-worthy manners and etiquette</u>.

14. The Defendant has intentionally and specifically marketed their *Infringing Products* in the same channels of commerce as the Plaintiff.

15. It is unreasonable to believe that the Defendant conducted a reasonable inquiry or search into the use of PRINCESS CHARM SCHOOL. If a search was conducted, Defendant must have encountered many of instances of Plaintiff's products bearing the PRINCESS CHARM SCHOOL mark as Plaintiff has used and still maintains many types of media for promoting and selling their products.

16. Plaintiff owns the www.princesscharmschool.com domain, a Princess Charm School Facebook® page, a Princess Charm School Twitter® account, and sells books

online via the same online retailers used by the Defendant, such as Amazon and Barnes & Noble. In light of the overwhelming amount of marketing and advertising utilized by the Plaintiff it can only be reasonable to infer that Defendant knew about Plaintiff's trademark and willfully chosen to infringe the trademark of the Plaintiff.

17.   On or about June 30, 2008, the Plaintiff executed a contract with Tate Publishing and Enterprises Inc., giving Tate permission to publish and distribute a book entitled: *Princess Charm School*. The Plaintiff authored this book, *Princess Charm School*, which is her original creation. Additionally, this book incorporates the Plaintiff's PRINCESS CHARM SCHOOL name. A true and correct image of the front cover of the book bearing Plaintiff's PRINCESS CHARM SCHOOL name is attached hereto as Exhibit A. A true and correct copy of the PRINCESS CHARM SCHOOL book is attached hereto as Exhibit __.

18.   Plaintiff has a valid copyright registration on the artwork embodied on the front cover of the *Princess Charm School* book, along with the original content included in the book.

19.   On or about January 5, 2009, the Plaintiff registered the domain www.princesscharmschool.com with Netfirms. A true and correct copy of the current WHOIS domain registration www.princesscharmschool.com for is attached hereto as Exhibit B. This domain incorporates the Plaintiff's PRINCESS CHARM SCHOOL name. The Plaintiff has since used this website to market her PRINCESS CHARM SCHOOL marked goods and services.

20.   On or about June 23, 2009, the original work *Princess Charm School* book was released to bookstores, nationwide.

21.   On or about June 2009, the Plaintiff established social media accounts on the websites www.facebook.com and www.twitter.com to promote Plaintiff's products. True and correct snapshots of the Plaintiff's social media accounts are provided in Exhibits C and D, which are attached hereto.

22.   On or about December 21, 2009, the Plaintiff established a Princess Charm School Blog to further promote her products and services. This blog is hosted on the Plaintiff's website www.princesscharmschool.com and incorporates the Plaintiff's PRINCESS CHARM SCHOOL name.

23.   On or about March 5, 2010, the Plaintiff contracted with Harrison House Publishing to publish and nationally distribute Plaintiff's second book *The Official Princess Handbook*, a derivative work of her original *Princess Charm School* book.

24.   On or about May 19, 2010, the Plaintiff registered for an Oklahoma Sales Tax Permit with the Oklahoma Tax Commission under the name Princess Charm School for selling and reselling books, jewelry, grooming kits, clothing, DVDs and CDs, teaching material, and other related items.

4

25. On or about June of 2010, Harrison House Publishing designed a logo for Princess Charm School. (See Exhibit E, which is a true and correct image of the Princess Charm School logo.) This logo has been consistently and prominently used on Plaintiff's website and has also been consistently and prominently used on marketing material, products such as workbooks, and live events including Princess Charm School etiquette events. The Plaintiff has hosted live events since at least 2010.

26. On or about August 2, 2010, the Plaintiff established Princess Charm School Productions, LLC, with the Oklahoma Secretary of State. Princess Charm School Productions, LLC, is an Oklahoma Limited Liability Company that promotes products bearing Plaintiff's PRINCESS CHARM SCHOOL name.

27. On or about October 2010, *The Official Princess Handbook* book was released, distributed, and sold in bookstores nationwide. A true and correct copy of the front cover of *The Official Princess Handbook* book is shown in Exhibit F.

28. In March of 2010, Harrison House Publishing designed a logo for *The Official Princess Handbook*. A true and correct image of logo is provided in Exhibit G.

29. Upon information and belief, on or about December 16, 2010, Defendant attempted to register three trademarks for "PRINCESS CHARM SCHOOL" for use in conjunction with the promotion and sale of Defendant's *Infringing Products*.

30. Upon information and belief, Defendant's registration Serial Number 85199916 was a Section 1(b) application filed on December 16, 2010 in International Class 016 (Paper Goods and Printed Material). The description provided to the U.S.P.T.O. for PRINCESS CHARM SCHOOL is PRINTED MATTER AND PAPER GOODS; SCHOOL SUPPLIES OF ALL KINDS.

31. Upon information and belief, Defendant's registration Serial Number 85199910 was a Section 1(b) application filed on December 16, 2010 in International Class 028 (Toys and Sporting Goods Products). The description provided to the U.S.P.T.O. for PRINCESS CHARM SCHOOL is TOYS, GAMES AND PLAYTHINGS, NAMELY, DOLLS, DOLL CLOTHING AND DOLL ACCESSORIES; DOLL PLAYSETS AND ACCESSORIES THEREFOR; DOLL HOUSES AND ACCESSORIES THEREFOR; TOY FIGURES AND ACCESSORIES THEREFOR; TOY ANIMAL FIGURES AND ACCESSORIES THEREFOR; ELECTRONIC TOY DIARIES.

32. Upon information and belief, Defendant's registration Serial Number 85199920 was a Section 1(b) application filed on December 16, 2010 in International Class 02 (Toys and Sporting Goods Products). The description provided to the U.S.P.T.O. for PRINCESS CHARM SCHOOL is CLOTHING, SHOES AND COSTUMES.

33. The filing dates for each of these intent-to-use trademark registrations come well after Plaintiff's first use in commerce of their PRINCESS CHARM SCHOOL named products and services.

34. A reasonable clearance search conducted before filing would have uncovered Plaintiff's PRINCESS CHARM SCHOOL name, namely because of existence of their domain name. Additionally, the Defendant's goods are very nearly related, if not identical, to Plaintiff's goods and services that are directed to providing entertainment and instruction regarding etiquette, manners, poise, hygiene, and other similar themes for young girls. Defendant's *Infringing Products* encompass similar themes and Defendant has marketed their products as such.

35. Upon information and belief, Defendant hired Mrs. Elise McVeigh as their "manners expert" and spokesperson, to promote their line of *Infringing Products*. A true and correct copy of the website announcing a partnership between Mrs. Elise McVeigh and the Defendant is shown in Exhibit H.

36. According to a Q3-Q4 2011 Barbie Global Newsletter, the Defendant saw a significant increase in POS (Point-of-Sale) of 38% with regard to their marketing of Princess Charm School via various etiquette events with Mrs. McVeigh. The Newsletter states, "with the help of etiquette expert Elise McVeigh, girls all over the country learned the proper princess curtsey, princess wave and twirl, dinner tableware setup, and even to say "please" and "thank you"...This royal affair was surely an event to be remembered by every girl and mom alike! These events, along with other support, have lead to *38% POS growth* over Fashion Fairytale!" (emphasis added). A true and correct copy of the Q3-Q4 2011 Barbie Global Newsletter is attached as Exhibit I.

37. According to the Q3-Q4 2011 Barbie Global Newsletter, the Defendant saw a significant increase in online impressions, which were over delivered by 400%, and the Fall Entertainment POS saw an increase of 10% based upon the use of their domain www.barbie.com/princess-charm-school. The Newsletter states, "*For the first time in Barbie entertainment history*, a full flash website was developed, which brought to life the hallways of Princess Charm School complete with virtual classrooms, characters and galleries. A contest was overlaid on the website encouraging girls to complete all three princess classes—poise, art and tea party—for a chance to win tickets to the Ultimate Graduation Party or one of 10 secondary prize packs." *See* Exhibit I, page 3.

38. The Defendant felt so strongly about potential success of their Princess Charm School line of products that they took the unprecedented step of creating a full flash dedicated website purposed to advertising their products. *See* Exhibit I, page 3.

39. Upon information and belief, Defendant and Mrs. Elise McVeigh together produced a "Princess in Training" Manners Checklist bearing the PRINCESS CHARM SCHOOL name. These checklists were used to both instruct young girls in manners and etiquette as well as promote Defendants products bearing the PRINCESS CHARM SCHOOL name. A true and correct copy of a web page taken from

6

www.thedomesticbuzz.com describing the use of the Manners Checklist is attached as Exhibit J. A true and correct copy of the image illustrating the Manners Checklist is also shown in Exhibit J.

40.     Upon information and belief, the Defendant promoted their *Infringing Products* by facilitating a "Barbie Princess Charm School" mall tour around the United States. These events were advertised as including a Princess Charm School stage show where you learn princess-worthy manners and etiquette. A true and correct copy of a press release dated September 3, 2011 is included as Exhibit K.

41.     Defendant clearly intended for their *Infringing Products* to be targeted to the exact same demographic as the demographic targeted by the Plaintiff. Moreover, the Defendant's *Infringing Products* are clearly intended to encompass the same themes included in Plaintiff's products and services.

### Plaintiff's Products and Services

42.     Plaintiff released for sale two books that include Plaintiff's PRINCESS CHARM SCHOOL name. The first publication includes a "*Princess Charm School*" Title that is displayed on the cover of a book as follows: The word PRINCESS is shown stylized along with the words CHARM and SCHOOL. These words are displayed against scrolled signage, along with a crown that is positioned above the Title. The "*Princess Charm School*" publication bears a distinctive trade dress, which consists of the overall appearance of the Title, artwork and design reflected on the book's cover. Again, Exhibit A illustrates a sample cover of Plaintiff's original work "*Princess Charm School*."

43.     Plaintiff's PRINCESS CHARM SCHOOL name displayed on the publication's cover is inherently distinctive to the public, and serves primarily as a designator of origin of products emanating from Plaintiff.

44.     The second publication includes the Title "*The Official Princess Handbook*" that is displayed on the cover of a book as follows: The word PRINCESS is shown emboldened and capitalize along with the words "THE OFFICIAL" positioned above the PRINCESS word and the word "HANDBOOK" positioned below PRINCESS. The words are displayed against an ornate golden placard with a crown that is placed above the Title. The PRINCESS CHARM SCHOOL name is utilized throughout the second publication and is set apart from the surrounding text by capitalization of the PRINCESS CHARM SCHOOL name.

45.     The "*The Official Princess Handbook*" includes the PRINCESS CHARM SCHOOL name, which is distinctive to the public, is utilized throughout the book, and serves primarily as a designator of origin of products emanating from Plaintiff.

46.     Plaintiff has utilized the PRINCESS CHARM SCHOOL name in conjunction with a PRINCESS CHARM SCHOOL logo to advertise and promote events conducted by Plaintiff including manners and etiquette instructional events. In conjunction with

7

instructional events, Plaintiff has provided various products that bear the PRINCESS CHARM SCHOOL name and logo. These products include completion certificates, manners and tip sheets, and placemats that all bear the PRINCESS CHARM SCHOOL name and logo.

47.   Plaintiff also offers for sale a line of jewelry, activity mats, certificates, and grooming kits, with each piece being sold under the PRINCESS CHARM SCHOOL name. Plaintiff attached her PRINCESS CHARM SCHOOL logo and business literature to all shipped merchandise.

48.   As a result of the widespread use and display of the Plaintiff's trademarks, (a) the public and the trade use them to identify and refer to Plaintiff's series of publications, (b) the public and the trade recognize that such designations refer to a high quality publication emanating from a single source, and (c) said trademark and trade dress have built up secondary meaning and extensive goodwill.

49.   Plaintiff has marketed and continues to market this series of works via their website www.princesscharmschool.com and through various third-party distribution entities such as Ingram Publisher Services Inc., Amazon, Barnes & Noble, and Powell's Books.

### Defendant Adopts and Uses and Identical Name - PRINCESS CHARM – to Market and Sell Their Barbie Princess Charm School *Infringing Products*

50.   Upon information and belief, since on or about June 2011, Defendant has produced, marketed, and sold numerous books bearing the PRINCESS CHARM SCHOOL name. Attached hereto as Exhibit H is a true and correct listing of the Defendant's books bearing the PRINCESS CHARM SCHOOL name. *See* Exhibit L, Table 1.

51.   Upon information and belief, Defendant has produced, marketed, and sold various Barbie dolls and toys bearing the PRINCESS CHARM SCHOOL name. *See* Exhibit L, Table 2.

52.   Upon information and belief, since on or about September 13, 2011, Defendant has produced, marketed, and sold DVDs and Digital Downloads bearing the PRINCESS CHARM SCHOOL name. *See* Exhibit L, Tables 3 and 4.

### Defendant's Conduct is Likely to Cause and Has Caused Significant Confusion and is Hindering the Ability of Consumers to Readily Obtain the PRINCESS CHARM SCHOOL Products and Services

53. The Defendant's use of the PRINCESS CHARM SCHOOL name is likely to, and indeed has caused, significant and irreparable consumer confusion in the marketplace for at least the following reasons:

- First, Plaintiff's rights in the PRINCESS CHARM SCHOOL name in association with their goods and services are well established in the marketplace. Plaintiff's goods and services have been sold in interstate commerce via their domain since 2009. This name is identical to the name that Defendant has adopted for its line of Princess Charm School products.
- Second, Plaintiff's products and services are directed to young girls and provide entertainment and instruction encompassing common and specific themes that teach young girls etiquette, poise, manners, and other similar themes. Defendant has marketed their *Infringing Products* to young girls and has explicitly highlighted their products association with manners and etiquette as a vehicle to promote their products. *See* Exhibits J, K, and I.
- Third, the Plaintiff and Defendant have marketed their products in the same channels of commerce, namely Amazon, Barnes & Noble, as well as generally on the Internet. When conducting both Google® and Bing® searches for the terms "Princess Charm School" the generated search results pages show that references to the Defendant's products significantly outweigh the single link to Plaintiff's website. A true and correct copy of screenshots from the aforementioned Google® and Bing® search results are attached hereto as Exhibit M.
- Fourth, actual confusion has occurred with consumers. A true and correct copy of an image file and associated with commentary that was uploaded to a social media image sharing website hosted on www.flickr.com is included as Exhibit N. The image shows Defendant's Barbie logo in combination with Plaintiff's Princess Charm School logo of Exhibit E. This is but one instance of actual confusion.
- Fifth, given the enormous size and financial prowess of the Defendant and their distributors, the Defendant's marketing efforts have completely overpowered and suffocated Plaintiff's ability to effectively market their products and services over the Internet.

54.   The Defendant devotes substantial resources to marketing and promotional activities. As the Defendant indicated in their 2010 Mattel Annual Report and to the Securities and Exchange Commission ("SEC") in the Defendant's 2011 10-K filing:

> Mattel supports its product lines with extensive advertising and consumer promotions. Advertising takes place at varying levels throughout the year and peaks during the traditional holiday season. Advertising includes television and radio commercials, and magazine, newspaper, Internet advertisements, and social media. Promotions include in-store displays, sweepstakes, merchandising materials, and major events focusing on products and tie-ins with various consumer products companies.
>
> During 2010, 2009, and 2008, Mattel incurred expenses of $647.3 million (11.1% of net sales), $609.8 million (11.2% of net sales), and $719.2 million (12.2% of net sales), respectively, for advertising and promotion.

9

Attached hereto as Exhibit O is a true and correct copy of relevant portions of the 2010 Mattel Annual Report cited above.

55.     The Defendant's advertising and promotional financial figures provided above clearly demonstrate the enormous size and strength of the company and provide an explanation as to why the Plaintiff's products and services have been drowned out in the marketplace. The advertising, promotion, and selling of *Infringing Products* has only lead to further confusion and has greatly diminished the Plaintiff's ability to market and promote their products and services online.

56.     The Defendant's three largest customers in 2011 were Wal-Mart, Toys "R" Us, and Target. All three of these corporations have significant e-commerce sites where they advertise, promote, and sell products and toys for young children. All of these companies promote and offer for sale over their respective websites substantial selections of Defendant's toys and related merchandise.

57.     Defendant's actions as alleged have caused, and will continue to cause irreparable harm to Plaintiff and to the business and substantial goodwill represented thereby, and said acts and damage will continue unless restrained by this Court.

## COUNT ONE
## TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

58.     Plaintiff realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

59.     Defendant's acts as alleged constitute trademark infringement, false designation of origin, false representation and false description in violation of the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a), all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

60.     Upon information and belief, by such wrongful acts Defendant has, and unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with their trademark, including diversion of customers, lost sales, and lost profits.

61.     Defendant's *Infringing Products* dilute the market and serve to destroy the distinctiveness of Plaintiff's trademark.

62.     Plaintiff has no adequate remedy at law.

## COUNT TWO
## COPYRIGHT INFRINGEMENT – DEFENDANT's BOOKS

63.     Plaintiff realleges and incorporates by reference the allegations contained in each

10

preceding paragraph of this Complaint.

64. Plaintiff has obtained a copyright registration for the *Princess Charm School* book, No.: TX 7-487-349 (see Exhibit P).

65. Plaintiff has obtained a copyright registration for *The Official Princess Handbook* book, No.: TX 7-511-473. A true and correct copy of a webpage from www.copyright.gov of the registration number is shown in Exhibit S.

66. Plaintiff's hereby allege that Defendant published and distributed books, included in the *Infringing Products* (See Exhibit *H*), which are substantially similar to Plaintiff's original creations in their *Princess Charm School* book and *The Official Princess Handbook* book. Plaintiff has lost substantial revenue from Defendant's copying of Plaintiff's copyrighted material.

## COUNT THREE
## COPYRIGHT INFRINGEMENT – DEFENDANT's MOVIE

67. Plaintiff realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

68. Defendant has created, published, distributed and sold in interstate and international commerce a movie titled "*Barbie, Princess Charm School*" which is substantially similar to Plaintiff's original PRINCESS CHARM SCHOOL books, infringing Plaintiff's valid copyrights in those literary works. Defendant's *Barbie, Princess Charm School* movie is an unauthorized derivative work in violation of Plaintiff's exclusive right to create derivative works under 17 U.S.C. § 106(2).

## COUNT FOUR
## COPYRIGHT INFRINGEMENT – DEFENDANT's LIVE PERFORMANCES

69. Plaintiff realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

70. Defendant hosted, and continues to host, live performances in the form of etiquette training events under the name of "*Barbie, Princess Charm School – Mall Tours*" that infringes protectable elements of Plaintiff's copyright(s) and violates Plaintiff's exclusive right to public performances of Plaintiff's *Princess Charm School* book and *The Official Princess Handbook* book under 17 U.S.C. § 106(4).

## COUNT FIVE
## COPYRIGHT INFRINGEMENT – DEFENDANT's COVER ART

71. Plaintiff realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

72.     Defendant unlawfully copied all or part of Plaintiff's cover art (Figure 1) for the book *Princess Charm School*, in violation of Plaintiff's copyright in both designs elements and color combinations, as shown below:





**Figure 1**                                   **Figure 2**

As can be clearly seen, the cover art for Plaintiff's book includes the words "Princess Charm School," across a blue-sky background, where the blue-sky background is studded with stars. Additionally, the cover art includes a lush green landscape with a walking path and a large castle positioned to the side. Also, a princess crown is located in an almost identical position relative to Plaintiff's cover art and Defendant's cover art. Defendant's cover art (Figure 2) includes each and every one of these design elements. This side-by-side comparison is also attached as Exhibit Q. A copy of Plaintiff's Copyright Registration VA 1-819-305 for this cover art is provided in Exhibit R.

73.     Plaintiff has lost substantial revenue from Defendant's unlawful and willful copying of Plaintiff's copyrighted material.

74.     Plaintiff's sale of its own works and derivative works is prejudiced by Defendant's copyright infringements. Immediately after the after Defendant released their direct to DVD movie (September of 2011) Plaintiff's sales of their book *Princess Charm School* plummeted.

## COUNT SIX
## UNFAIR COMPETITION AND PASSING OFF

75.     Plaintiff realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

76.     This claim is brought under the common law of the State of Oklahoma for unfair competition and passing off.

77.     The Defendant's unauthorized use of Plaintiff's trademarked and copyrighted products are likely to and do permit the Defendant to palm off their *Infringing Products* as its own creation, all to the detriment of the Plaintiff and to the unjust enrichment of the Defendant.

78.     The Defendant's unauthorized use of Plaintiff's trademarked and copyrighted products have caused damage to Plaintiff by diminishing the value of the work associated with the Plaintiff, all to the detriment of the Plaintiff and her reputation as an author.

79.     The Defendant's acts have and will continue to cause the Plaintiff irreparable harm unless enjoined by this court. The Plaintiff has no adequate remedy at law.

## COUNT SEVEN
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80.     Plaintiff realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

81.     Defendant's failure to conduct a reasonable and thorough trademark clearance search before adopting the PRINCESS CHARM SCHOOL name evidences at least reckless behavior by the Defendant, if not bad faith. Had the Defendant conducted a reasonable and thorough trademark clearance search, the Defendant would have discovered the PRINCESS CHARM SCHOOL name in association with various goods and services offer by the Plaintiff. Indeed, one would have need to go no further than to enter the PRINCESS CHARM SCHOOL name into a web browser as a URL.

82.     The Defendant's failure to conduct a reasonable and thorough trademark search was an extreme and outrageous act, especially in light of the fact that the Defendant is very adept in intellectual property matters, and specifically trademark procurement.

83.     The Plaintiff has experienced extreme emotional distress as a result of the Defendant's actions, and moreover the distress was severe.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for an order of the Court:**

A. Granting a preliminary and permanent injunction restraining Defendant, its officers, directors, principals, agents, servants, employees, successors and assigns, and all individuals acting in concert or participation with it, from:

    i) infringing Plaintiff's trademarks;
    ii) infringing Plaintiff's copyrights; and
    iii) unfairly competing with Plaintiff.

    B. Directing Defendant to use its best efforts to recall from the trade and other third parties any and all *Infringing Products* and any marketing, advertising and promotional materials used in connection therewith;

    C. Directing Defendant to file with the Court and serve on counsel for Plaintiff, within thirty days after entry of any injunction issued by the Court in this action, a sworn statement as provided in 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendant has complied with the injunction;

    D. Directing Defendant to deliver up to Plaintiff for destruction or other disposition, within thirty days of the entry of final judgment herein, any and all *Infringing Products* and any promotional, marketing, advertising, and promotional materials used in connection therewith, now or hereafter in its possession, custody or control;

    E. Directing Defendant to account to Plaintiff for any and all profits derived by Defendant's from the sale of their *Infringing Products*;

    F. Awarding Plaintiff a monetary judgment against Defendant for Plaintiff's damages and Defendant's profits pursuant to 15 U.S.C. § 1117;

    G. Trebling the amount of such award on account of Defendant's willful, intentional, and bad faith conduct pursuant to 15 U.S.C. § 1117;

    H. Awarding Plaintiff its reasonable attorneys' fees, costs and disbursements incurred herein in view of Defendant's intentional and willful infringement, pursuant to 15 U.S.C. § 1117; and

    I. Awarding Plaintiff a monetary judgment against Defendant for Plaintiff's damages and Defendant's profits pursuant to 17 U.S.C. § 504 (b) and, if applicable, 17 U.S.C. § 504 (d) for Defendant's copyright infringement.

    J. Awarding the Plaintiff such injunctive relief, whether temporary and/or permanent, as the Court may deem just and proper under 17 U.S.C. § 502.

    K. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

    Dated:_____

Respectfully submitted,

*/s/ Charles L. Richardson*

Charles L. Richardson, OBA #13388
Gary L. Richardson, OBA #7547
Jason C. Messenger, OBA #19887
RICHARDSON RICHARDSON
BOUDREAUX KEESLING PLLC
7447 South Lewis
Tulsa, OK 74136
(918) 492-7674   Office
(918) 493-1925   Fax

ATTORNEYS FOR PLAINTIFF