IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LISA DELMEDICO HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-0404-JHP |
| | ) | |
| | ) | |
| MATTEL INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court are Defendant Mattel Inc.'s ("Mattel") Motion to Dismiss [Doc. No. 26]; Plaintiff's Response thereto [Doc. No. 30]; and Mattel's Reply [Doc. No. 39]. After review of the briefs, and for the reasons stated below, Mattel's Motion to Dismiss is **GRANTED**.

## BACKGROUND

On September 27, 2012, Plaintiff commenced this action against Mattel, alleging that Mattel infringed on certain copyright and trademark rights held by Plaintiff.[1] Since 2008, Plaintiff has been creating, marketing, and selling products and services using the Princess Charm School name. Under this name, Plaintiff has developed and marketed products, "such as books, jewelry, grooming kits, clothing, digital downloads, teaching material, and placemats, as well as services such as etiquette events, that provide entertainment and instructional information to young girls regarding etiquette, manners, grooming, behavior, and poise." [Doc. No. 22, ¶ 12]. On June 30, 2008, Plaintiff contracted with a publishing company, facilitating the publication and distribution of her book, *Princess Charm School*. *Princess Charm School*, which is Plaintiff's original creation, was released to bookstores throughout the United States on June

---

[1] Plaintiff filed her First Amended Complaint [Doc. No. 22] on December 7, 2012.

23, 2009. On March 11, 2009, Plaintiff obtained a copyright in the cover art for *Princess Charm School*, Registration Number VA 1-819-305 ("PCS Cover Art"). Plaintiff alleges that in June of 2011, Mattel produced numerous products, including books, dolls, and a DVD movie under the Princess Charm School name. Plaintiff seeks compensation for damages resulting from Mattel's alleged infringements.

## DISCUSSION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* at 679. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon,* 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

### A. Count Four - Copyright Infringement

Mattel argues that Plaintiff's copyright infringement claim must fail because the PCS Cover Art is not substantially similar to the cover art for the Barbie Princess Charm School movie DVD ("DVD Cover Art") as a matter of law. A copyright infringement claim requires that a Plaintiff establish both: (1) that she possesses a valid copyright; and (2) copying by defendants of protected components of the copyrighted material. *Country Kids 'N City Slicks,*

*Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir. 1996). Because Mattel does not dispute the sufficiency of Plaintiff's pleadings as to the first element, the Court considers only Plaintiff's allegations with regard to the second element—copying.

**1. Copying**

"The copying element of an infringement claim has two components." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012) (citing *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir. 1996); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01 [B] (2010)). To satisfy the first component, "a plaintiff must demonstrate that the defendant copied the plaintiff's work 'as a factual matter.'" *Id.* (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993)). "Second, the plaintiff must establish 'substantial similarity' between the allegedly infringing work and the elements of the copyrighted work that are legally protected." *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942-43 (10th Cir. 2002)). Mattel's primary argument is that Plaintiff cannot establish substantial similarity between the copyrighted and accused works.

*a. Substantial Similarity*

"Substantial similarity" requires a determination of "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking materials of substance and value." *Country Kids*, 77 F.3d at 1288 (quotations omitted). "The essence of this test is whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same." *Id.* (quotation omitted). This two-step analysis requires courts to, first, identify the legally protected elements

of the copyrighted work, and, second, determine whether the accused work is substantially similar to the legally protected elements of the copyrighted work.

Consistent with this analysis, the Court "must first distill the protectable elements of the copyrighted work—i.e., determine what aspects constitute protectable expression." *Id.* Section 102(b) provides, "In no case does copyright protection ... extend to any idea ... [or] concept ... regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). "This provision enshrines the 'fundamental tenet' that copyright 'protection extends only to the author's original expression and not to the ideas embodied in that expression.'" *Blehm v. Jacobs*, 702 F.3d 1193, 1200 (10th Cir. 2012) (quoting *Gates Rubber Co.,* 9 F.3d at 836); *see also Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 547 (1985) (explaining that copyright protection extends only to "those aspects of the work—termed 'expression'—that display the stamp of the [plaintiff's] originality"); *Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir. 1992) ("[I]n looking at ... two works of art to determine whether they are substantially similar, focus must be on the similarity of the *expression* of an idea or fact, not on the similarity of the facts, ideas or concepts themselves."). Significant to the instant case, "names and titles" along with "familiar symbols or designs" are not "subject to copyright." 37 C.F.R. § 202.1. Furthermore, copyrights do not protect expression regarded as "*scenes a faire.*" *Gates Rubber Co.*, 9 F.3d at 838. "Under the *scenes a faire* doctrine, [courts] deny protection to those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting." *Id.*

"Once a court has distinguished between unprotected ideas and protected expression in a copyrighted work, it must determine whether the protected elements are substantially similar to the accused work." *Blehm*, 702 F.3d at 1202. Determining substantial similarity is ordinarily a

question of fact. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002). However, when both the accused and copyrighted works are before a district court on a motion to dismiss, the Court may consider the works themselves and determine as a matter of law whether the allegation of substantial similarity can be supported. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63-64 (2nd Cir. 2010); *see also Jacobsen*, 287 F.3d at 941. In accordance with the aforementioned principles, the Court endeavors to compare the PCS Cover Art with the DVD Cover Art in order to determine whether Plaintiff's allegation of substantial similarity can be supported.

After carefully comparing the PCS Cover Art with the DVD Cover Art, the Court finds that Plaintiff's allegation of "substantial similarity" cannot be supported. Plaintiff alleges that Mattel unlawfully copied four elements from her work, asserting that both works: (1) use the name "Princess Charm School"; (2) display a blue-sky background "studded with stars"; (3) depict a walking path that cuts through "lush green landscape" and ends at "a large castle" off to the side; and (4) include a "princess crown" in the center of the picture. [Doc. No. 22, ¶ 73]. While the Court recognizes that some of the *ideas* underlying both works are similar, the *expression* of those ideas, to which legal protection is given, is significantly different. As such, no reasonable jury, upon viewing the two works, would "regard their aesthetic appeal as the same" and conclude that Mattel appropriated "Plaintiff's protectable expression by taking material of substance and value." *Country Kids*, 77. F.3d at 1284, 1288. Accordingly, Plaintiff's copyright infringement claim regarding Mattel's cover art is dismissed.

## B. Intentional Infliction of Emotional Distress

Mattel also argues that Plaintiff's intentional infliction of emotional distress claim must be dismissed because Plaintiff has failed to allege conduct sufficient to satisfy all of the elements

necessary to establish a claim for intentional infliction of emotional distress. Plaintiff alleges that Mattel's "failure to conduct a reasonable and thorough trademark clearance search was an extreme and outrageous act, especially in light of the fact that [Mattel] is very adept in intellectual property matters, and specifically trademark procurement." [Doc. No. 22, ¶ 83].

Intentional infliction of emotional distress is considered an independent tort in Oklahoma and is also known as the tort of outrage. *Computer Publications, Inc. v. Welton,* 2002 OK 50, ¶ 7, 49 P.3d 732, 734 (Okla. 2002). "To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Schovanec v. Archdiocese of Oklahoma City,* 188 P.3d 158, 175 (Okla. 2008) (quoting *Computer Publications*, 49 P.3d at 735).

Recovery for the intentional infliction of emotional distress requires proof that a defendant's conduct was extreme and outrageous. *Breeden v. League Svcs. Corp.,* 575 P.2d 1374, 1376 (Okla. 1978). Oklahoma follows The Restatement (Second) of Torts § 46 with regard to the tort of intentional infliction of emotional distress. *See Miller v. Miller*, 956 P.2d 887, 900 (Okla. 1998). The Restatement (Second) of Torts § 46 explains the second element of the tort as follows:

> *d. Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community

would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

(Emphasis original).

The Court finds that Plaintiff's Complaint fails to allege the kind of outrageous conduct which would support a claim of intentional infliction of emotional distress under Oklahoma law. To categorize Mattel's failure to conduct a reasonable trademark clearance search as the type of extreme and outrageous conduct sufficient to establish a claim for intentional intention of emotional distress would significantly expand the narrow scope of actionable conduct covered by this tort. Accordingly, Plaintiff's intentional infliction of emotional distress claim is dismissed.

## CONCLUSION

For the reasons detailed above, Mattel's Motion to Dismiss is **GRANTED**.

DATED this 21st day of June, 2013.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma